**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RHODIA, INC. | ) Lead Case No. 1:05-CV-10242 DAB |
| ERISA LITIGATION | ) MDL 1714 (DAB) |
| | ) |
| | ) <u>ECF CASE</u> |
| This Document Relates To: | ) |
| | ) NAMED PLAINTIFFS' UNOPPOSED |
| ALL ACTIONS. | ) MOTION AND MEMORANDUM |
| | ) SEEKING PRELIMINARY APPROVAL |
| | ) OF CLASS ACTION SETTLEMENT |
| | ) AGREEMENT AND ORDER: (1) |
| | ) APPROVING FORM OF NOTICE; (2) |
| | ) CERTIFYING SETTLEMENT CLASS; |
| | ) AND (3) SCHEDULING FAIRNESS |
| | ) HEARING |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

I.      RELEVANT BACKGROUND ......................................................................2

II.     SETTLEMENT NEGOTIATIONS ..............................................................3

III.    TERMS OF THE PROPOSED SETTLEMENT AGREEMENT .....................4

IV.     ARGUMENT ..............................................................................................7

        A.      The Proposed Settlement Is, on Its Face, Fair, Reasonable and Adequate
                Such that the Court Should: (1) Schedule the Fairness Hearing; and (2)
                Order Dissemination of the Proposed Class Notice to the Settlement Class
                and Publication of the Summary Notice. ....................................................7

                1.      The Settlement Is the Product of Non-Collusive Negotiation that
                        Involved Mediation and Many Settlement Discussions..............................9

                2.      The Proposed Settlement Achieves a Substantial Monetary
                        Recovery for the Settlement Class .................................................9

                3.      The Proposed Settlement Provides Significant Non-Monetary
                        Consideration .........................................................................9

                4.      The Proposed Settlement Does Not Improperly Grant the Named
                        Plaintiffs Preferential Treatment ................................................11

                5.      The Proposed Settlement Falls "Within the Range of Possible
                        Approval" ...............................................................................12

                        (a)     All Parties' Counsel Are Very Experienced and Their
                                Support for the Settlement Is Entitled to Significant Weight ........12

                        (b)     The Settlement Confers Significant Economic Value on the
                                Settlement Class......................................................................13

                        (c)     The Settlement Is Consistent With Those That Have Been
                                Reached in Other ERISA Litigation Matters ................................14

                        (d)     The Proposed Settlement Calls for the Appointment of an
                                Independent Fiduciary to the Plan to Evaluate and Opine on
                                Its Fairness ............................................................................14

        B.      Certification of the Proposed Settlement Class Is Appropriate Under
                Federal Rule of Civil Procedure 23(a) and (b)(1)...................................15

i

      1.       The Settlement Class Is Sufficiently Numerous To Make Joinder Impracticable...........................................................................................16

      2.       Rule 23(a)'s Commonality and Typicality Requirements Are Satisfied.....................................................................................................16

      3.       The Named Plaintiffs Have Fairly and Adequately Protected the Interests of the Settlement Class ....................................................17

      4.       The Court Should Certify the Proposed Settlement Class Under Rule 23(b)(1)(A) and (B) ...........................................................17

             (a)       The Court should certify the proposed Settlement Class under Rule 23 (b)(1)(B). ................................................18

             (b)       The Court should also certify the proposed Settlement Class under Rule 23 (b)(1)(A). ......................................20

  C.     The Proposed Class Notice and Summary Notice Satisfy the Requirements of Rule 23 and the Due Process Clause ...............................................21

V.     PROPOSED SCHEDULE ...................................................................................22

VI.    CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Baker v. Comprehensive Employee Solutions,*
  227 F.R.D. 354 (D. Utah 2005) .............................................................................. 19, 20

*Banyai v. Mazur,*
  205 F.R.D. 160 (S.D.N.Y. 2002) ............................................................................ 17, 18

*Bogosian v. Gulf Oil Corp.,*
  621 F. Supp. 27 (E.D. Pa. 1985) ................................................................................... 12

*Bunnion v. Consol. Rail Corp.,*
  No. CIV.A. 97-4877, 1998 U.S. Dist. LEXIS 7727 (E.D. Pa. May 14, 1998) .......... 19, 20

*Cannon v. Tex. Gulf Sulphur Co.,*
  55 F.R.D. 308 (S.D.N.Y. 1972) .................................................................................... 12

*Cook v. Niedert,*
  142 F.3d 1004 (7th Cir. 1998) ...................................................................................... 11

*Cromer Fin. Ltd. v. Berger,*
  205 F.R.D. 113 (S.D.N.Y. 2001) .................................................................................. 16

*Dardaganis v. Grace Capital Inc.,*
  889 F.2d 1237 (2d Cir. 1989) ....................................................................................... 13

*Dornberger v. Metro. Life Ins. Co.,*
  203 F.R.D. 118 (S.D.N.Y. 2001) .................................................................................. 11

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.,*
  137 F.R.D. 240 (S.D. Ohio 1991) ................................................................................ 12

*Feret v. CoreStates Fin. Corp.*
  No. Civ. A 97-6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998) ............................ 17, 19

*Gruby v. Brady*
  838 F. Supp. 820 (S.D.N.Y. 1993) ............................................................................... 19

*Ikon Office Solutions, Inc. Sec. Litig.,*
  191 F.R.D. 457 (E.D. Pa. 2000) ............................................................................... 17, 18

*In re AOL Time Warner ERISA Litig.,*
  No. 02 Civ. 8853 SWK, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ...................... 17

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ................................................................. 16

*In re Clark Oil & Ref. Corp. Antitrust Litig.*,
    422 F. Supp. 503 (E.D. Wis. 1976) ............................................................. 10

*In re Currency Conversion Fee Antitrust Litig.*,
    No. 01 MDL 1409, M-21-95, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ...................... 1

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ............................................................... 12

*In re Elan Sec. Litig.*,
    385 F. Supp. 2d 363 (S.D.N.Y. 2005) .......................................................... 9

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... 14

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    209 F.R.D. 94 (E.D. Pa. 2002) ................................................................. 11

*In re Initial Public Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ............................................................... 10

*In re Linerboard Antitrust Litig.*,
    MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, (E.D. Pa. June 2, 2004) ...................... 12

*In re Medical X-Ray Film Antitrust Litig.*,
    No. CV-93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ............................... 8

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) .............................................................. 8, 21

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................. 1, 7, 8

*In re Panasonic Consumer Elecs. Prods. Antitrust Litig.*,
    No. 89 CIV. 0368 (SWK), 1989 WL 63240 (S.D.N.Y. June 5, 1989) ........................... 8

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ................................................................... 16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................ 8, 15

*In re Remeron Direct Purchaser Antitrust Litig.*,
    No. 03-0085 (FSH), 2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005) .................... 12

*In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Litig.*,
    208 F.R.D. 493 (S.D.N.Y. 2002) ................................................................. 17

*In re Salomon Inc. Sec. Litig.*,
    No. 91 Civ. 5442 (RPP), 1994 U.S. Dist. LEXIS 8038 (S.D.N.Y. June 15,
    1994) ........................................................................................................... 12

*In re Williams Cos. ERISA Litig.*,
    231 F.R.D. 416 (N.D. Okla. 2005) ................................................... 16, 19, 20

*In re Worldcom, Inc. ERISA Litig.*,
    354 F. Supp. 2d 423 (S.D.N.Y. 2005) ........................................................ 18

*In re: Remeron End-Payor Antitrust Litig.*,
    No. 02-2007 (FSH), 2005 U.S. Dist. LEXIS 27011 (D.N.J. Sept. 13, 2005) ................. 12

*In re: Revco Sec. Litig.*,
    Master File No. 851, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 5, 1992) ............... 12

*Ingles v. City of N.Y.*,
    No. 01 Civ. 8279(DC), 2003 WL 402565 (S.D.N.Y. Feb. 20, 2003) ............................ 20

*Jansen v. Greyhound Corp.*,
    692 F. Supp. 1022 (N.D. Iowa 1986) .......................................................... 10

*Kane v. United Indep. Union Welfare Fund*,
    No. 97-1505, 1998 U.S. Dist. LEXIS 1965 (E.D. Pa. Feb. 23, 1998) ........................... 19

*Koch v. Dwyer*,
    No. 98 Civ. 5519 (RPP), 2001 WL 289972 (S.D.N.Y. Mar. 23, 2001); ......................... 18

*Marisol v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ........................................................................ 16

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y. 1993) .................................................................... 16

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .................................................................................... 21

*Rankin v. Rots*,
    220 F.R.D. 511 (E.D. Mich. 2004) .............................................................. 19

*Robinson v. Metro-N. Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001) ........................................................................ 16

*Sheppard v. Consol. Edison Co. of N.Y.*,
    No. 94-CV-0403(JG), 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) ............................. 10

*Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life,*
    140 F.R.D. 474 (S.D. Ga. 1991) ..................................................................................... 19

*Taft v. Ackermans,*
    No. 02 Civ. 7951(PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)............................. 14

*Thomas v. SmithKline Beecham Corp.,*
    201 F.R.D. 386 (E.D. Pa. 2001)............................................................................... 18, 20

*Van Vranken v. Atl. Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) ................................................................................ 12

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982)....................................................................................... 15, 21

*Yap v. Sumitomo Corp. of Am.,*
    No. 88 Civ. 700 (LBS), 1991 U.S. Dist. LEXIS 2124 (S.D.N.Y. Feb. 22,
    1991) .............................................................................................................................. 12

## STATUTES

Fed. R. Civ. P.
    23(a)(4) ........................................................................................................................... 17
    23(b)(1)(B) ...................................................................................................................... 18

## OTHER AUTHORITIES

*3B Moore's Federal Practice*
    9 23.80[2.-1] (2d ed. 1993) .............................................................................................. 8

*Manual for Complex Litigation, Third,*
    § 30.41 (West 1995)........................................................................................................... 8

Named Plaintiffs[1] Jose Jimenez and Pam Skeeters, individually and on behalf of a proposed Settlement Class, respectfully move the Court for an Order that preliminarily approves the proposed Settlement embodied in the Class Action Settlement Agreement, which is attached as Attachment 1.  By granting preliminary approval of the Settlement Agreement, the Court will: (1) approve the proposed plan to provide notice of the proposed Settlement to the Settlement Class; (2) schedule a hearing to determine finally whether the proposed Settlement is fair, reasonable and adequate under Fed. R. Civ. P. 23; and (3) certify a proposed Settlement Class pursuant to Fed. R. Civ. P. 23(b).[2]  The relief requested is unopposed.

To approve preliminarily the proposed Settlement, the Court must determine whether the Settlement is "within the range" of what could be found to be fair, adequate and reasonable, so that notice should be given to the proposed Settlement Class and a Fairness Hearing should be scheduled to consider final approval of the Settlement under Fed. R. Civ. P. 23(e).  *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, M-21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (explaining that preliminary approval of a settlement should be granted when  the proposed settlement falls within the reasonable range of approval) citing *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  Named Plaintiffs respectfully submit that this standard is easily met here because the proposed Settlement:  (i) provides a substantial financial benefit to the Settlement Class through the creation of a $2.4 million Settlement Fund; (ii) provides significant non-monetary benefits through the adoption of various provisions relating to Rhodia's Common Stock Fund; (iii) occurs

---

[1]  Unless otherwise defined, all capitalized terms in this Motion and Memorandum shall have the meanings specified in the Settlement Agreement attached hereto as Attachment 1.

[2]  The [Proposed] Preliminary Approval Order is attached hereto as Attachment 2 and contains the following exhibits:  (1) Notice of Class Action Settlement Agreement to be mailed to the Settlement Class, Exhibit A; and (2) Summary Notice of Class Action Settlement to be published, Exhibit B.

after extensive investigation of the claims; and (iv) results from arm's-length negotiations supervised by an experienced and well-versed ERISA mediator, Jeff Lewis of Lewis, Feinberg, Lee, Renaker & Jackson, P.C.

## I.    RELEVANT BACKGROUND

On June 13, 2005 and June 14, 2005, the Named Plaintiffs commenced the above-captioned Action by each filing separate complaints which asserted various claims for relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, against the Defendants.  The Named Plaintiffs allege that each Defendant is a fiduciary with respect to the Rhodia Inc. Savings Plus Plan (the "Plan"), and that each acted in a fiduciary capacity, or assumed a fiduciary role in relation to the Plan.  Specifically, the Named Plaintiffs allege that the Defendants breached their fiduciary duties of loyalty and prudence to the Plan participants by, among other things, allegedly: (i) maintaining concentrated investments in the stock of Rhodia Inc.'s ("Rhodia") French parent company, Rhodia SA, when it was imprudent, thereby exposing the Plan to unreasonable risk of loss and injury; (ii) failing to monitor the prudence of the Plan's investment in Rhodia SA stock; (iii) failing to monitor those to whom fiduciary duties had been delegated; and (iv) knowingly or recklessly permitting the Plan to invest in Rhodia SA stock, which they knew was overvalued.  The Named Plaintiffs also allege that Defendants had a duty to provide complete and accurate information regarding Plan investments, but allegedly failed to disclose known, material adverse information concerning Rhodia SA, thereby allegedly misleading and depriving the Named Plaintiffs and members of the Settlement Class of their opportunity to make informed judgments as to their Plan investments in Rhodia SA stock.  By not being fully informed, the Named Plaintiffs allege that they and other members of the Settlement Class were harmed.  Defendants vigorously dispute all claims.

On November 15, 2005, the Named Plaintiffs' cases were coordinated and transferred from the United States District Court for the District of New Jersey to the Southern District of New York pursuant to 28 U.S.C. § 1407.  The Named Plaintiffs filed a Consolidated Complaint for Breach of Fiduciary Duty ("Complaint") on August 4, 2006.  Defendants moved to dismiss the Complaint on November 28, 2006.  Plaintiffs have not responded to Defendants' motion in light of ongoing settlement discussions.  The Court has not ruled on Defendants' motion, which was withdrawn without prejudice in light of pending settlement discussions.

On June 13, 2007, the Parties mediated this action with the assistance of mediator Jeff Lewis.  During the mediation, the parties reached an agreement in principal for settlement of this Action and signed a Settlement Term Sheet.  On July 3, 2007, and pursuant to the Settlement Term Sheet, Defendants provided Class Counsel with confirmatory discovery consisting primarily of Rhodia Investment Committee meeting minutes, corresponding agendas, fiduciary responsibility guidelines and investment reviews of the Plan.  These documents spanned the time period of April 1999 through March 2007. Class Counsel engaged in a thorough review and analysis of the confirmatory discovery in light of the proposed Settlement.  Ultimately, Class Counsel determined that the monetary and non-monetary benefits achieved by the Settlement of this Action are far more favorable and beneficial to Named Plaintiffs and members of the Settlement Class than the potential risks of continued litigation.

## II.   SETTLEMENT NEGOTIATIONS

Counsel for Named Plaintiffs and Defendants have engaged in extensive, arm's-length settlement negotiations, which included mediation with an experienced and well-qualified mediator.  After negotiating and signing the Settlement Term Sheet, the Parties engaged in a lengthy and good faith negotiation process to solidify and refine the terms of the Settlement.  The Parties forcefully pressed their respective positions as to the Settlement terms and discussed the

uncertainty both sides faced if the Action were adjudicated to judgment and/or subsequently appealed.  Ultimately, the Parties reached an agreement and the Settlement Agreement was fully executed on October 15, 2007.

## III.   TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

The following summarizes the principal terms of the Settlement Agreement:

A.     Scope: The Settlement Agreement resolves all claims and all defenses regarding the Action.

B.     Consideration: The Settlement Agreement provides for both non-monetary and monetary consideration for settlement of this Action.  Specifically, Rhodia has agreed to deposit the sum of $2.4 million into the Escrow Account as provided for in Sections 7.1.2 and 7.2 of the Settlement Agreement.  In addition, as part of the settlement of the claims asserted in this Action, Rhodia agreed to eliminate the Rhodia Stock Fund ("Common Stock Fund") as an investment option under the Plan on or before December 31, 2007.  The Common Stock Fund was liquidated on October 1, 2007.  In the event Rhodia decides to reinstate the Common Stock Fund at a future date, the Settlement Agreement provides that:   (i) Rhodia will not allocate any portion of matching contributions to the Common Stock Fund; (ii) there will be no restrictions on the ability of participants to transfer balances out of the Common Stock Fund; and (iii) Rhodia will add the following language to the Summary Plan Description:  "Investment in the stock of any single company is an inherently risky investment.  You should consider this risk as you are deciding whether to invest in the Common Stock Fund."

C.     Settlement Class: The Settlement Agreement contemplates that the Court will certify the following Settlement Class under Fed. R. Civ. P. 23(b)(1) or (b)(2):

> all persons who were participants in or beneficiaries of the Plan at any time between January 1, 1999 and October 1, 2007,[3] and whose accounts included

---

[3] The Rhodia Stock Fund was liquidated on October 1, 2007.

4

investments in the Common Stock Fund, excluding any Defendants or their immediate family members.

D.    Independent Fiduciary Approval:    The Settlement is contingent upon an independent Plan fiduciary, selected and retained by Rhodia: (1) approving the Settlement Agreement and giving a release to the Released Parties in its capacity as a fiduciary of the Plan and for and on behalf of the Plan which is coextensive with the Releases from Named Plaintiffs on behalf of themselves, the Plan and the Settlement Class; (2) authorizing the Settlement in accordance with Prohibited Transaction Class Exemption 2003-39; and/or (3) finding that the Settlement Agreement does not constitute a prohibited transaction under ERISA § 406(a).  The costs associated with the services of the Independent Settlement Fiduciary shall be paid by Rhodia or the Insurer.

E.    Plan of Allocation:  The Settlement Agreement contemplates, subject to the Court's approval, that after payment of Court-approved fees, costs, and Named Plaintiffs' Incentive Payments, the Net Proceeds will be allocated to the Plan accounts of Settlement Class members pursuant to a detailed Plan of Allocation that will be submitted to the Court for approval within 60 days after the Court's order of preliminary approval.  In general terms, the Net Proceeds will be allocated to Settlement Class members on a *pro rata* basis such that the amount received by each Settlement Class member will depend on his or her calculated loss, relative to the losses of other Settlement Class members, related to Plan investments in Rhodia common stock and/or units of the Rhodia Stock Fund.  In this way, the Plan of Allocation will distribute the Net Proceeds equitably based upon each Settlement Class member's estimated loss.

Under the Settlement Agreement and as soon as practicable after the Effective Date, Class Counsel shall direct the Escrow Agent to disburse the Net Proceeds attributable to Named Plaintiffs and members of the Settlement Class with current account balances in the Plan, to the Rhodia Savings Plus Plan Trust ("Trust") for distribution by the Plan in accordance with the Plan

5

of Allocation.  At the time the funds are transferred to the Trust, the Escrow Agent or Class Counsel shall provide the Plan with the amount to be allocated to each participant's account. Rhodia shall direct the Plan to distribute the funds received by the Trust in accordance with the instructions in the Plan of Allocation.

With respect to the Named Plaintiffs and members of the Settlement Class who took a distribution from the Plan prior to the Effective Date and who will receive a Final Individual Dollar Recovery as that term is defined in the Plan of Allocation, the Net Proceeds will be disbursed to a sub-trust for the purpose of holding such amounts pending distribution to said former participants.  The Net Proceeds to former participants will be distributed pursuant to the Plan of Allocation.  Class Counsel shall prepare and issue a notice to former participants who are entitled to receive a Final Individual Dollar Recovery that explains their options with respect to amounts deposited on their behalf to accounts in their name in the sub-trust.  If any funds in the sub-trust are not claimed, they will be deemed forfeitures under the Plan and will be returned to the Plan to be used for the sole purpose of reducing Plan administrative expenses.  In no event, will these forfeitures inure to the benefit of Defendants.  The Defendants shall not be considered fiduciaries with respect to any assets held in the sub-trust.

F.    Released Claims: The Settlement Class will release all claims against the Released Parties based upon allegations that have been or could have been asserted in the Action **and** that in part arise from or relate to any act, omission, fact, or event alleged in the Action. The Settlement Class will also release other claims related to the Action as set forth in the Settlement Agreement. *See* Settlement Agreement, ¶¶ 3.1-3.4.

G.    Class Notice:    Attached to the [Proposed] Preliminary Approval Order, Attachment 2 hereto, are the following notices:

6

- The Class Notice (Exhibit A) shall be mailed to the last known address of all members of the Settlement Class and published on a website established by the Settlement Plan Administrator; and

- The Summary Notice (Exhibit B) shall be published and appear in the *Investor's Business Daily* or a comparable national newspaper and *The Times*, of Trenton, New Jersey.

H. <u>Reasons for the Settlement</u>:  Plaintiffs have entered into this proposed Settlement with an understanding based on:  (i) the investigation, research, and discovery as outlined above; (ii) the motion practice undertaken by the parties; (iii) the likelihood that Plaintiffs would prevail on summary judgment; (iv) the likelihood that Plaintiffs would prevail at trial; (v) the range of possible recovery; and (vi) the substantial complexity, expense and duration of litigation necessary to prosecute this action through trial, post-trial motions, and likely appeals, and the significant uncertainties in predicting the outcome of this complex litigation.  Having undertaken this analysis, Class Counsel and Plaintiffs have concluded that the Settlement is fair, reasonable, and adequate, and should be presented to the Court for approval.

## IV.   ARGUMENT

The Court should preliminarily approve the Settlement because it falls within the range of what could be found to be fair, adequate and reasonable.  Further, the proposed Settlement Class satisfies the requirements of Fed. R. Civ. P. Rule 23.

### A.   The Proposed Settlement Is, on Its Face, Fair, Reasonable and Adequate Such that the Court Should: (1) Schedule the Fairness Hearing; and (2) Order Dissemination of the Proposed Class Notice to the Settlement Class and Publication of the Summary Notice

"Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled."  *NASDAQ*, 176 F.R.D. at 102.  Courts are afforded wide discretion in determining the information that they wish to consider at this preliminary stage.

This initial assessment can be made on the basis of information already known to the court. *Manual for Complex Litigation, Third*, § 30.41 (West 1995). In determining whether **preliminary** approval of the Settlement is warranted, **the sole issue** before the Court is whether the Settlement is within the range of what could be found to be fair, adequate and reasonable, so that notice should be given to the proposed Settlement Class, and a Fairness Hearing scheduled to consider final approval of the Settlement. If the preliminary evaluation of the proposed Settlement does not disclose grounds to doubt its fairness or other obvious deficiencies and appears to fall within the range of possible approval, the Court should direct that notice under Fed. R. Civ. P. Rule 23(e) be given to the Settlement Class members of a formal fairness hearing. *See NASDAQ,* 176 F.R.D. at 102; *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval.'") (citation omitted); *In re Medical X-Ray Film Antitrust Litig.,* No. CV-93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) (explaining that "preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements").

The Court may not make any final determination as to the fairness or adequacy of the proposed Settlement at the preliminary stage. *In re Panasonic Consumer Elecs. Prods. Antitrust Litig.*, No. 89 CIV. 0368 (SWK), 1989 WL 63240, at *2 (S.D.N.Y. June 5, 1989). Rather, that decision is made only at the final approval stage, after notice of the Settlement has been given to the members of the Settlement Class and they have had an opportunity to voice their views of the Settlement. *See 3B Moore's Federal Practice* ¶ 23.80[2.-1], at 23-479 (2d ed. 1993).

Finally, the opinion of experienced counsel supporting the Settlement is entitled to considerable weight in the Court's evaluation of the negotiation process and Settlement. *See In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *In re Elan Sec.*

*Litig.*, 385 F. Supp. 2d 363, 369 (S.D.N.Y. 2005).  As set forth below, Class Counsel have extensive experience in complex class action litigation, the counsel for the Parties negotiated the Settlement at arm's-length and in good faith, and Class Counsel have determined that the proposed Settlement achieves an exceptional result for members of the Settlement Class.

> **1.    The Settlement Is the Product of Non-Collusive Negotiation that Involved Mediation and Many Settlement Discussions**

The settlement negotiations between the Parties were non-collusive and were mediated by experienced ERISA mediator, Jeff Lewis, who had a significant role in the negotiation of the Settlement terms.  Mr. Lewis, an experienced ERISA litigator who has substantial experience litigating claims similar to those raised in this Action, was selected by the Parties as the most appropriate mediator for this Action.  He was involved throughout the mediation and generously shared with both sides his expertise on the issues raised by this Action.  Mr. Lewis was well-versed in all aspects of this case, and he brought a well-informed opinion to the negotiations that aided the parties in resolving this Action.  With the assistance of Mr. Lewis, the Parties signed the Settlement Term Sheet on June 13, 2007 and subsequently engaged in extensive negotiation of the particular terms in the Settlement Agreement over the next three months.  The Parties completed the execution of the Settlement Agreement on October 15, 2007.

> **2.    The Proposed Settlement Achieves a Substantial Monetary Recovery for the Settlement Class**

The proposed Settlement provides a Cash Amount of $2.4 million for the Settlement Class *in addition to* substantial non-monetary provision.  As discussed *infra*, the $2.4 million recovery is well within the range of other ERISA settlement amounts.

> **3.    The Proposed Settlement Provides Significant Non-Monetary Consideration**

In addition to the monetary recovery for the Settlement Class, the Settlement Agreement also provides significant non-monetary consideration for the Settlement relating to Rhodia's

Common Stock Fund.  Specifically, Rhodia agreed to eliminate the Common Stock Fund as an investment option under the Plan on or before December 31, 2007.  Rhodia liquidated the Common Stock Fund on October 1, 2007.  In the event Rhodia decides to reinstate the Common Stock Fund at a future date, however, the Settlement Agreement provides that:  (i) Rhodia will not allocate any portion of matching contributions to the Common Stock Fund; (ii) there will be no restrictions on the ability of participants to transfer balances out of the Common Stock Fund; and (iii) Rhodia will add the following language to the Summary Plan Description:  "Investment in the stock of any single company is an inherently risky investment.  You should consider this risk as you are deciding whether to invest in the Common Stock Fund."  *See In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 197 (S.D.N.Y. 2005) (explaining that "a court must … evaluate any proposed class action settlement to see whether it falls within the 'range of possible approval.'  Such a determination, though, need not focus solely on the monetary benefits of a proposed settlement. It should additionally weigh the value of any nonmonetary or intangible benefits associated with the agreement."); *In re Clark Oil & Ref. Corp. Antitrust Litig.*, 422 F. Supp. 503, 511 (E.D. Wis. 1976) (explaining that although the "the nonmonetary features of the settlement agreement … are not susceptible of valuation in conventional terms, the Court is convinced that they confer real and substantial benefits upon members of the class").  *See also Sheppard v. Consol. Edison Co. of N.Y.*, No. 94-CV-0403(JG), 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) (approving a class action settlement based upon non-monetary and monetary relief); *Jansen v. Greyhound Corp.*, 692 F. Supp. 1022 (N.D. Iowa 1986) (finding reasonableness of non-monetary relief in connection with an ERISA action based on allegations of breached of fiduciary duty).  The non-monetary equitable relief that the proposed Settlement Agreement provides to the Class was carefully constructed over the course of the parties' negotiations, imparts substantial additional value, and contributes to the fairness, adequacy, and

reasonableness of the Settlement.  In the *In re Ikon Office Solutions, Inc. Sec. Litig.*, in fact, the

court approved a settlement of similar ERISA claims in which the relief consisted primarily of

removing the plan's restriction on reallocation of match contributions, and did not include any

direct monetary payment to the class.  209 F.R.D. 94, 98-99 (E.D. Pa. 2002).

<blockquote>

**4.      The Proposed Settlement Does Not Improperly Grant the Named Plaintiffs Preferential Treatment**

</blockquote>

An incentive award may be given to compensate Named Plaintiffs for efforts expended

"or the benefit of the lawsuit."  *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125

(S.D.N.Y. 2001) (citation omitted).  The proposed Settlement provides that Named Plaintiffs

may apply for and are entitled to receive incentive payments to the extent awarded by the Court.

Such incentive awards are proper and are a common feature of class action settlements. *See, e.g.,*

*Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998):

> Having resolved the issues surrounding the attorney's fees, we address the final
> matter raised by the Fund – the propriety of Archie Cook's $25,000 incentive
> award. Because a named plaintiff is an essential ingredient of any class action, an
> incentive award is appropriate if it is necessary to induce an individual to
> participate in the suit. [Citation omitted.] In deciding whether such an award is
> warranted, relevant factors include the actions the plaintiff has taken to protect the
> interests of the class, the degree to which the class has benefited from those
> actions, and the amount of time and effort the plaintiff expended in pursuing the
> litigation. [Citation omitted.] Here these factors are readily satisfied. Cook
> brought a suit that resulted in structural reforms to the Health & Welfare Fund as
> well as a cash recovery of more than $ 13 million....

As another court recently noted:

> Finally, Plaintiffs' Counsel request the approval of an incentive award in the
> amount of $60,000, in total, for the two named plaintiffs, LWD and Meijer. The
> named plaintiffs spent a significant amount of their own time and expense
> litigating this action for the benefit of the Class. As recognized by numerous
> courts, such efforts should not go unrecognized. *See End-Payor Opinion* at *32,
> citing *FTC v. Mylan Labs., Inc. (In re Lorazepam & Clorazepate Antitrust Litig.),*
> 205 F.R.D. 369, 400 (D. D.C. 2002) (**"Incentive awards are not uncommon in
> class action litigation and particularly where ... a common fund has been
> created for the benefit of the entire class....** In fact, courts routinely approve
> incentive awards to compensate named plaintiffs for the services they provided

and the risks they incurred during the course of the class action litigation")
(internal quotations and citation omitted) (emphasis supplied).

*In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085 (FSH), 2005 U.S. Dist. LEXIS

27013 (D.N.J. Nov. 9, 2005).[4]

> ### 5.    The Proposed Settlement Falls "Within the Range of Possible Approval"

There are numerous additional criteria used by courts in reviewing class settlements for

preliminary approval, many of which overlap and each of which can be given more, or less,

weight according to the unique situation facing the parties and the court.  In this instance, certain

additional factors place this proposed Settlement well within the "range of possible approval."

> ### (a)    All Parties' Counsel Are Very Experienced and Their Support for the Settlement Is Entitled to Significant Weight

Courts recognize that the opinion of experienced and informed counsel supporting a

proposed settlement is entitled to considerable weight.  *In re Salomon Inc. Sec. Litig.,* No. 91

Civ. 5442 (RPP), 1994 U.S. Dist. LEXIS 8038, at *42 (S.D.N.Y. June 15, 1994); *Cannon v. Tex.*

*Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1972) (opinion of counsel should be given

"great weight").  Class Counsel are experienced practitioners in the field of complex ERISA,

---

[4]  "The amount requested here is similar to amounts awarded in comparable settlements." *See In re: Remeron End-Payor Antitrust Litig.*, No. 02-2007 (FSH), 2005 U.S. Dist. LEXIS 27011, at *33 (D.N.J. Sept. 13, 2005) (granting incentive awards of $30,000 each to two third party payor plaintiffs); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, (E.D. Pa. June 2, 2004) (approving $25,000 to each representative of the classes); see also, *Yap v. Sumitomo Corp. of Am.*, No. 88 Civ. 700 (LBS), 1991 U.S. Dist. LEXIS 2124 (S.D.N.Y. Feb. 22, 1991) ($30,000 incentive awards to the named plaintiffs); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 300 (N.D. Cal. 1995) ($50,000 incentive award to named plaintiff); *In re Dun & Bradstreet Credit Servs. Customer Litig.,* 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (two incentive awards of $55,000 and three incentive awards of $35,000); *In re: Revco Sec. Litig.*, Master File No. 851, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 5, 1992) ($200,000 incentive award to named plaintiff); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 incentive awards to each of the six named plaintiffs); *Bogosian v. Gulf Oil Corp.,* 621 F. Supp. 27, 32 (E.D. Pa. 1985) (incentive awards of $20,000 to each of two named plaintiffs). The requested incentive awards here are both appropriate and reasonable based on this authority.

class action, derivative and securities litigation. Both firms acting as Class Counsel in this case have a nationwide complex litigation practice; additionally, each also has years of practical ERISA experience in 401(k) class actions.   Accordingly, Class Counsel are well-versed in evaluating the resolution of ERISA litigation.

Class Counsel urge preliminary approval of the proposed Settlement based upon their experience, their knowledge of the strengths and weaknesses of the case, their analysis of the discovery reviewed to date, the likely recovery at trial and on appeal, and the time and risk involved in obtaining such, and all other factors considered in evaluating proposed class action settlements.  In particular, Class Counsel have reviewed all of the core documentation necessary both to evaluate liability in this case.  For example, this case revolves around whether there was a breach of fiduciary duty by defendants in their decision to invest, and remain invested, in Rhodia securities.  As such, Plaintiffs have reviewed all of the meeting materials and minutes concerning this issue and compared these documents with Defendants' treatment of other plan assets.  The Second Circuit has held in *Dardaganis v. Grace Capital Inc.* that, "[i]f, but for the breach, the Fund would have earned even more than it actually earned, there is a 'loss' for which the breaching fiduciary is liable."  889 F.2d 1237, 1243 (2d Cir. 1989).  As a result, Plaintiffs have received all of the transaction data for the plan and have developed a complex economic model comparing the Plan against what could have been earned in other common ERISA investments.  Plaintiffs have modeled the likely damages that they could prove at trial in light of various legal approaches and have concluded that the settlement is fair, adequate, and reasonable given this modeling and the risks involved.

(b)     **The Settlement Confers Significant Economic Value on the Settlement Class**

The Settlement confers significant economic value on the Settlement Class.  The Net Proceeds derived from the $2.4 million Cash Amount will provide significant payment to

13

members of the Settlement Class who suffered significant loss, and will be allocated among the

authorized participants in accordance with the Plan of Allocation, which is based upon a

calculation of relative losses of the Settlement Class.

(c) **The Settlement Is Consistent With Those That Have Been Reached in Other ERISA Litigation Matters**

The proposed Settlement in the Action fits comfortably within the range of settlements

approved in other 401(k) ERISA litigation.  Some specific ERISA settlements which have been

settled around the proposed Settlement include the following:

| COMPANY | AMOUNT |
|---|---|
| Ikon | $0.00 (case settled for equitable relief and value obtained by class members in securities case settlement) |
| Louisiana Pacific | $485,000.00 |
| CVS Drugs | $3 million |
| United Airlines | $5.25 million |
| ADC | $3.25 million |
| NUI Corp. | $850,000 |
| Royal Ahold | $2.5 million |

These settlements demonstrate that the $2.4 million negotiated in this case is well within

the range of settlements obtained in other ERISA cases.[5]

(d) **The Proposed Settlement Calls for the Appointment of an Independent Fiduciary to the Plan to Evaluate and Opine on Its Fairness**

Finally, as a safeguard to ensure that the Plan's interests are fully protected, the

Settlement Agreement requires Rhodia to appoint an Independent Fiduciary for the Plan pursuant

---

[5] *See also Taft v. Ackermans*, No. 02 Civ. 7951(PKL), 2007 WL 414493, at *7 (S.D.N.Y. Jan. 31, 2007) (explaining that in ERISA class actions "damages caused by the alleged fraud are difficult to separate from the loss of value caused by external factors. The comparison of the settlement amount to such a speculative damages figure is not dispositive – or even particularly useful – in assessing the fairness of a settlement") (citing *In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 460-61 (S.D.N.Y. 2004) (explaining that "the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness").

to the Department of Labor's Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, PTE 2003-29. *See* Settlement Agreement, ¶2.2. Appointment of an Independent Fiduciary is designed to comply with Department of Labor regulatory provisions for allocation of class action settlement benefits. The Settlement Agreement provides that Rhodia will retain an Independent Fiduciary not later than thirty (30) business days after the Settlement Agreement is executed, *i.e.*, by November 14, 2007. The Independent Fiduciary will review the Settlement and opine on its fairness to the Plan and its participants and beneficiaries.

### B. Certification of the Proposed Settlement Class Is Appropriate Under Federal Rule of Civil Procedure 23(a) and (b)(1).

Pursuant to the Settlement Agreement, Named Plaintiffs seek certification of the following Settlement Class for settlement purposes pursuant to Rule 23(a) and (b)(1):[6]

> All persons who were participants in or beneficiaries of the Plan at any time between January 1, 1999 and October 1, 2007, whose accounts included investments in the Common Stock Fund, excluding any Defendants or their immediate family members.

*See* Settlement Agreement, ¶1.40. Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. Further, courts have recognized that "settlement classes have proved to be quite useful in resolving major class action disputes." *Weinberger v. Kendrick,* 698 F.2d 61, 72 (2d Cir. 1982). The proposed Settlement Class should be certified because it satisfies the numerosity, commonality, typicality and adequacy requirements of Rule 23(a)(1)-(4) and the requirements of Rule 23(b)(1).

---

[6] Defendants reserve the right to challenge certification of any class should the Settlement Agreement not become Final.

### 1.    The Settlement Class Is Sufficiently Numerous To Make Joinder Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. *See Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 55 (S.D.N.Y. 1993). The proposed Settlement Class would include approximately 4,000 participants and beneficiaries of the Plan. Thus, Rule 23(a)'s numerosity requirement would be met.

### 2.    Rule 23(a)'s Commonality and Typicality Requirements Are Satisfied

The commonality requirement of Rule 23(a)(2) and typicality requirement of Rule 23(a)(3) are discussed together because courts treat them as closely linked and often evaluate them together. *See, e.g., Marisol v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality and typicality requirements tend to merge into one another."); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (same). The threshold for satisfying these two requirements is not high. The commonality inquiry "asks if the named plaintiffs' 'grievances share a common question of law or of fact' with those of the proposed class...." *Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (quoting *Marisol*, 126 F.3d at 376). Typicality is satisfied if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marisol*, 126 F.3d at 376); *see also In re Blech Sec. Litig.,* 187 F.R.D. 97, 104 (S.D.N.Y. 1999) (typicality was satisfied when plaintiff's claims arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability).

Here, Named Plaintiffs satisfy Rule 23(a)'s commonality and typicality requirements because Plan-wide relief would affect all persons who were participants or beneficiaries of the Plan at relevant times and such relief is well-suited to an ERISA class action. *See, e.g., In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 422 (N.D. Okla. 2005); *Banyai v. Mazur,* 205

F.R.D. 160, 163 (S.D.N.Y. 2002); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 463-64 (E.D. Pa. 2000); *Feret v. CoreStates Fin. Corp.,* No. Civ. A 97-6759, 1998 WL 512933, at *9-10 (E.D. Pa. Aug. 18, 1998).

### 3.   The Named Plaintiffs Have Fairly and Adequately Protected the Interests of the Settlement Class

Rule 23(a) also requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)'s adequate representation requirement turns on two questions: "(1) the plaintiff's attorneys must be qualified, experienced and generally able to conduct the litigation; and (2) the plaintiff must not have interests antagonistic to those of the proposed Class." *In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Litig.*, 208 F.R.D. 493, 505 (S.D.N.Y. 2002).

Named Plaintiffs have sufficient commonality and typicality with the claims of the Settlement Class that they would fairly and adequately protect the interests of the Settlement Class. The commonality and typicality requirements found in this case assure that the Named Plaintiffs do not have interests that conflict with the interests of the Settlement Class. In addition, Defendants did not challenge the qualifications or ability of Class Counsel to represent the Settlement Class vigorously. In any case, Class Counsel are experienced class action attorneys who have served in leadership roles in many other complex litigations.

### 4.   The Court Should Certify the Proposed Settlement Class Under Rule 23(b)(1)(A) and (B)

In addition to meeting the prerequisites of Rule 23(a), a proposed class action must also satisfy one of the subdivisions of Rule 23(b). The proposed Settlement Class is proper for certification as a non opt-out class under Rule 23(b)(1). *In re AOL Time Warner ERISA Litig.*, No. 02 Civ. 8853 SWK, 2006 WL 2789862, at *3 (S.D.N.Y. Sept. 27, 2006) (explaining that "[d]ue to the plan-wide nature of the relief sought here … certification of a non-opt-out class

[under 23(b)(1)] is not only practical, but necessary").  Under Rule 23(b)(1), the Court may certify a class if:

> (1)     the prosecution of separate actions by or against individual members of the class would create a risk of:
>
> > (A)     inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B)     adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

By its very terms, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members."  *Ikon,* 191 F.R.D. at 466. Named Plaintiffs' ERISA claims will, as a practical matter, adjudicate the interests of all Plan participants, making certification under Rule 23(b)(1) appropriate. Though intertwined, the standards under Rule 23(b)(1)(A) and (B) will be briefly broken apart for analysis.

>      (a)          **The Court should certify the proposed Settlement Class under Rule 23 (b)(1)(B).**

For breach of fiduciary duty claims under ERISA, most courts have followed the reasoning of the drafters of the Federal Rules and concluded that subsection (b)(1)(B) of Rule 23 is the most natural and appropriate basis for class certification. *See* Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee Notes (1966) (stating that certification under 23(b)(1)(B) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries); *Banyai,* 205 F.R.D. at 165 (granting class certification under subsection (b)(1)(B) and invoking the Advisory Committee Notes).[7]

---

[7]   ERISA breach of fiduciary duty cases granting class certification under subsection (b)(1)(B) include: *In re Worldcom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423 (S.D.N.Y. 2005); *Koch v. Dwyer*, No. 98 Civ. 5519 (RPP), 2001 WL 289972 (S.D.N.Y. Mar. 23, 2001); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386 (E.D. Pa. 2001); *Bunnion v. Consol. Rail Corp.*, No.

Named Plaintiffs' ERISA claims are representative in nature, and the relief sought by Named Plaintiffs will benefit the Plan as a whole, making such claims particularly well suited for class treatment under the non-opt out provisions of Rule 23(b)(1)(B). *See Williams*, 231 F.R.D. at 424-25 (given the nature of an ERISA claim that provides for plan-wide relief "there is a risk that failure to certify the class would leave future plaintiffs without relief"); *see also, Baker v. Comprehensive Employee Solutions,* 227 F.R.D. 354, 360 (D. Utah 2005).    As one court explained:

> An action to enforce fiduciary duties is "brought in a representative capacity on behalf of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n.9 .... Any relief granted by a court to remedy a breach of fiduciary duty "inures to the benefit of the plan as a whole" rather than to the individual plaintiffs. *Id.* at 140. "Because a plan participant or beneficiary may bring an action to remedy breaches of fiduciary duty only in a representative capacity, such an action affects all participants and beneficiaries, albeit indirectly." ... Since Counts X and XI are brought by [plaintiffs] in their representative capacity, the Court finds that class certification for these claims is proper under Rule 23(b)(1)(B).

*Kane*, 1998 U.S. Dist. LEXIS 1965, at *24.

Certification of the Settlement Class under Rule 23(b)(1)(B) is appropriate because the primary relief for breaches of fiduciary duty that cause monetary losses is Plan-wide relief under ERISA Section 502(a)(2), 29 U.S.C. § 1109(a)(2).    Participants cannot successfully bring separate and serial Section 502(a)(2) claims for the same losses.  The Plan is entitled to only one recovery and, given the strong identity of interests, it is likely that any outcome in one case would equally apply to all subsequent cases. Thus, an adjudication of Named Plaintiffs' claims

---

CIV.A. 97-4877, 1998 U.S. Dist. LEXIS 7727, at *43 (E.D. Pa. May 14, 1998); *Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 U.S. Dist. LEXIS 1965 (E.D. Pa. Feb. 23, 1998); *Feret*, 1998 WL 512933; *Gruby v. Brady,* 838 F. Supp. 820 (S.D.N.Y. 1993); *Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life,* 140 F.R.D. 474 (S.D. Ga. 1991); *Rankin v. Rots,* 220 F.R.D. 511 (E.D. Mich. 2004).

under Section 502(a)(2) will as a practical matter be dispositive of the interests of other members

of the Settlement Class.

> **(b)** **The Court should also certify the proposed Settlement Class under Rule 23 (b)(1)(A).**

In addition to certification under Rule 23(b)(1)(B), it would be proper to also certify the

proposed Settlement Class under 23(b)(1)(A).  As the Court noted in *Bunnion*, 1998 U.S. Dist.

LEXIS 7727, at *43-44:

> We find that the ERISA [claims for breach of fiduciary duties, among others] are appropriate for certification under both [23(b)(1)(A) and (b)(1)(B)]. All of these claims relate to the interpretation and application of ERISA plans. [Defendant] treated the proposed class and subclass identically and any equitable relief granted will affect the entire class and subclass. Failure to certify a class would leave future plaintiffs without adequate representation. Moreover, we see a high likelihood of similar lawsuits against defendants should this class be denied. Inconsistent judgments concerning how the Plans should have been interpreted or applied would result in prejudice. While plaintiffs list a variety of relief sought in their amended complaint, ERISA specifically limits the relief available to that of an equitable, that is declaratory or injunctive, nature. 29 U.S.C. § 1132. To the extent that money damages are awarded or sought, we find them to be incidental.

*See also Ingles v. City of N.Y.*, No. 01 Civ. 8279(DC), 2003 WL 402565, at *7 (S.D.N.Y. Feb.

20, 2003) (finding that certification was appropriate under both 23(b)(1)(A) and (B)); *Baker*, 227

F.R.D. at 360 (noting that certification was appropriate under (b)(1)(A) because the fiduciary

duty at issue is owed to the entire class and separate actions would create the risk of establishing

inconsistent standards under ERISA); *Williams*, 231 F.R.D. at 424-25 (noting that certification is

appropriate under (b)(1)(A) because defendants could be subject to contradictory rulings about

the nature and scope of their fiduciary duties); *Thomas*, 201 F.R.D. at 397 (granting class

certification under subsection (b)(1)(A); "the plaintiffs seek broad declaratory and injunctive

relief related to defendants' conduct and the terms of the plan. If this relief were granted in some

actions but denied in others, the conflicting declaratory and injunctive relief could make

compliance impossible for defendants."); *Ikon*, 191 F.R.D. at 466 (granting certification under

(b)(1)(A): "There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.").

The pursuit of separate actions for Plan-wide relief would create a risk of varying adjudications concerning the bases and availability of such relief.  Because the specific nature of an ERISA Section 502(a)(2) claim makes class treatment highly preferable (if not necessary) over the alternative scenario of individual prosecution of such a claim, the Court should certify the Settlement Class under Rule 23(b)(1)(A).

**C.    The Proposed Class Notice and Summary Notice Satisfy the Requirements of Rule 23 and the Due Process Clause**

The parties have agreed upon proposed forms of Class Notice and Summary Notice (Attachment 2, Exibits A and B). The purpose of these notices is to fulfill the requirements of Rule 23(e) and due process by informing the members of the Settlement Class about the proposed Settlement and their opportunity to appear and be heard at the Fairness Hearing.

To satisfy Rule 23(e)(1)(B) and due process, notice to the class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  Notice, however, need only provide a "very general description of the proposed settlement." *Weinberger*, 698 F.2d at 70; s*ee also Michael Milken*, 150 F.R.D. at 60 (same).

The proposed forms of Class Notice and Summary Notice describe in plain English the terms and operation of the Settlement Agreement, the considerations that caused Class Counsel to conclude that the Settlement is fair and adequate, the maximum amount of attorneys' fees and Named Plaintiffs' case contribution compensation that Named Plaintiffs may seek, the procedure

21

for objecting to the Settlement, and the date and place of the Fairness Hearing.  For clarity, the Class Notice includes the applicable definitions for terms in the documents. With the Court's approval, the Class Notice will be mailed to each member of the Settlement Class no later than 60 days prior to the Fairness Hearing, and the Summary Notice will be published no later than 60 days prior to the Fairness Hearing.  The Class Notice will also be available on a website established by Class Counsel.

These proposed forms of notice will fairly apprise members of the Settlement Class of the Settlement and their options with respect to the Settlement, and fully satisfy due process requirements.

## V.   PROPOSED SCHEDULE

If the Settlement is preliminarily approved, the Court will establish dates for publication of the Summary Notice and mailing of the Class Notice, deadlines for objecting to the Settlement, deadlines for filing papers in support of the Settlement and a date for the Fairness Hearing.  The parties propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Entry of Proposed Preliminary Approval Order | As soon as practicable |
| Deadline for Named Plaintiffs to Publish Summary Notice | Approximately 60 days after entry of Preliminary Approval Order |
| Deadline for Named Plaintiffs to substantially complete mailing of Class Notice | Approximately 60 days after entry of Preliminary Approval Order |
| Deadline for Named Plaintiffs to submit Proposed Plan of Allocation | Approximately 60 days after entry of Preliminary Approval Order |
| Deadline for members of the Settlement Class to comment upon or object to the proposed Settlement | 21 days prior to date of Fairness Hearing |
| Deadline for Settlement Class to send Notice of Intention to Appear at Settlement Hearing | 21 days prior to date of Fairness Hearing |
| Deadline for Independent Fiduciary to comment upon  or object to the proposed Settlement | 14 days prior to date of Fairness Hearing |
| Deadline for Named Plaintiffs to file Motion for Final Approval of Settlement Agreement | 14 days prior to date of Fairness Hearing |

| | |
|---|---|
| and Fee Motion | |
| Proposed Fairness Hearing | Approximately 120 days after entry of Preliminary Approval Order |

## VI.   CONCLUSION

Having satisfied the standards for preliminary approval, Named Plaintiffs respectfully request that the Court: (1) grant certification of the proposed Settlement Class; (2) grant Named Plaintiffs' Unopposed Motion for Preliminary Approval of the Proposed Settlement; (3) authorize Class Counsel to disseminate the proposed Class Notice and publish the proposed Summary Notice to members of the Settlement Class; and (4) schedule the Fairness Hearing.

Respectfully submitted this 26th day of October, 2007.

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
CAROLINE A. SCHNURER

s/ Jeffrey P. Fink
JEFFREY P. FINK

610 West Ash Street, Suite 1800
San Diego, CA  92101
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991

THE LAW OFFICES OF MALLISON
  & MARTINEZ
STAN S. MALLISON
HECTOR R. MARTINEZ
1042 Brown Avenue, Suite A
Lafayette, CA 94549
Telephone: (925) 283-3842
Facsimile:  (925) 283-3426

Co-Lead Counsel for Plaintiffs

KLEEBLATT, GALLER & ABRAMSON LLC
RICHARD P. GALLER
IAN S. KLEEBLATT
25 Main Street
Hackensack, NJ 07601
Telephone: (201) 342-1800
Facsimile:  (201) 342-1848

Liaison Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify a true and exact copy of Named Plaintiffs' Unopposed Motion and Memorandum Seeking Preliminary Approval of Class Action Settlement Agreement and Order: (1) Approving Form of Notice; (2) Certifying Settlement Class; and (3) Scheduling Fairness Hearing has been served on all filing users through the Court's electronic filing system on this the 26th day of October, 2007, and served a copy of same upon the following counsel for plaintiffs via first class mail, postage prepaid:

THE LAW OFFICES OF MALLISON & MARTINEZ
STAN S. MALLISON
HECTOR R. MARTINEZ
1042 Brown Avenue, Suite A
Lafayette, CA 94549

I hereby certify that on October 26, 2007, I electronically submitted the [Proposed] Order: (1) Preliminarily Approving Settlement; (2) Certifying Settlement Class For Purposes Of Settlement; (3) Approving Form And Manner Of Notice; and (4) Scheduling Fairness Hearing . to the Clerk of the Court to the e-mail address <u>orders_and_judgments@nysd.uscourts.gov</u>

<u>/s/ Jeffrey P. Fink</u>

Jeffrey P. Fink